UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA A. COWART,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | CASE NO. CV 17-1553 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Debra A. Cowart ("Plaintiff") seeks review of the final decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying her applications for social security benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 13, 15). For the reasons stated below, the decision of the Commissioner is REVERSED and this case

is REMANDED for further administrative proceedings consistent with this decision.

## II.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-

3

Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

### III.
### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process in evaluating Plaintiff's case. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 13, 2012, the alleged onset date. (AR 27). At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbosacral spine, obesity, hypertension, and diabetes are severe impairments. (AR 28). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 28).

The ALJ then assessed Plaintiff's RFC and concluded that she can "lift and carry 10 pounds frequently and 20 pounds occasionally; stand/walk for 6 hours out of 8; sit without restrictions; occasional stooping and crouching; no climbing ropes, ladders, and scaffolds; and no working near unprotected heights."

4

(AR 28). At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a receptionist, administrative clerk, and data entry operator. (AR 32). Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Social Security Act since March 13, 2012, the alleged onset date. (AR 32).

**IV.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must " 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.' " Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir.

1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

V.

DISCUSSION

A. **New Evidence Is Part Of The Record Before This Court**

Following her August 2015 hearing, Plaintiff submitted new evidence that predated the ALJ's September 2015 decision: (1) a mental RFC from Carlos Jordan-Manzano, M.D., dated March 17, 2015; and (2) medical records from Tyron C. Reece, M.D., dated December 14, 2014, through August 27, 2015. (AR 665-94). The ALJ briefly acknowledged Dr. Jordan-Manzano's report (AR 31), but did not include it or Dr. Reece's records in the list of documents reviewed for his decision. (AR 33-38).

Plaintiff contends that the Appeals Council "made no indication that the new evidence was considered." (Dkt. No. 22 at 6). To the contrary, the Appeals Council considered the new evidence and made it a part of the record. (AR 2) ("we considered . . . the additional evidence listed on the enclosed Order"); (see id. 4-5). The Appeals Council nevertheless declined to alter the ALJ's decision. (AR 1-5). Thus, the new evidence became part of the record and must be considered by this Court in

6

reviewing the ALJ's decision. Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."). In other words, this Court must "determine whether the ALJ's finding of nondisability was supported by substantial evidence in the entire record - including any new evidence in the administrative record that the Appeals Council considered - not just the evidence before the ALJ." Gardner v. Berryhill, 856 F.3d 652, 656 (9th Cir. 2017).

**B. The ALJ Failed To Properly Weigh The Treating Physicians' Opinions**

An ALJ must afford the greatest weight to the opinions of the claimant's treating physicians. The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). Even if the treating physician's opinion is contradicted by another doctor, the ALJ may

not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. Id. at 830-31; see Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008). "If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record," the ALJ shall consider "specified factors in determining the weight it will be given[, including] . . . the length of the treatment relationship and the frequency of examination by the treating physician[ ] and the nature and extent of the treatment relationship between the patient and the treating physician." Orn, 495 F.3d at 631 (citation omitted); see 20 C.F.R. §§ 404.1527(d)(2) (listing factors to consider), 416.927(d)(2) (same).

### 1. Dr. Woodward

On June 14, 2013, Artis Woodward, M.D., Plaintiff's family practice physician, completed a Physical RFC Questionnaire. (AR 599-602). He opined that while Plaintiff is capable of "low stress" work, her lower back pain from sciatica and a lumbosacral sprain would cause frequent interference with the attention and concentration necessary to sustain simple, repetitive workday tasks. (AR 599-600). Dr. Woodward further concluded that Plaintiff can sit or stand for only ten to fifteen minutes before needing to change positions. (AR 600-01). During a normal workday, Plaintiff can sit, stand or walk less than two hours, total, out of an eight-hour workday. (AR 601). She can rarely lift ten

pounds and frequently lift less than ten pounds. (AR 601). Plaintiff can never twist, stoop/bend, crouch, climb ladders, or climb stairs. (AR 601). Dr. Woodward opined that Plaintiff has moderate limitations in doing repetitive reaching, handling or fingering. (AR 601). Finally, Dr. Woodward concluded that as a result of her impairments, Plaintiff would likely miss more than four days of work per month. (AR 602). Although the ALJ "considered" Dr. Woodward's opinion, it was "not accorded significant weight." (AR 30).

The ALJ rejected Dr. Woodward's opinion because Arthur Brovender, M.D., a medical expert ("ME") who testified at the August 2015 hearing, found the opinion unsupported by the medical record. (AR 30-31). Dr. Brovender concluded that Plaintiff's "examinations have all been essentially normal." (AR 31). The ALJ further surmised that Plaintiff's treating physicians "took [Plaintiff's] subjective allegations at face value and did not rely on objective findings in support of such limited functional limitations." (AR 31). The ALJ's analysis is contrary to law and not supported by substantial evidence.

First, to the extent that the ALJ relied on the opinion of the ME to reject Dr. Woodward's opinion, the ALJ erred. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. Instead, the opinions of a nonexamining physician may serve as substantial evidence only when the opinions "are

supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

Defendant contends that the ME's opinion was corroborated by the opinions of state agency physicians and the consultative examiner. (Dkt. No. 27 at 5-6). However, the state agency doctors are also nonexamining physicians, and the consultative examiner's functional assessment was more restrictive than the ME's. (Compare AR 50-51, with id. 400). Indeed, the consultative examiner agreed with Dr. Woodward that Plaintiff was limited to carrying ten pounds occasionally and less than ten pounds frequently. (Compare AR 400, with id. 601). Thus, Defendants arguments fail to persuade the Court that the ALJ's reliance on the ME's opinion was proper.

Second, the ALJ's vague and cursory explanations for rejecting Dr. Woodward's opinion are insufficient to meet the "specific, legitimate reasons" standard. As the Ninth Circuit has consistently mandated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) (footnote omitted); accord Orn, 495 F.3d at 632. Therefore, "[i]f the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Orn, 495 F.3d at 632 (citation omitted). Here, the ALJ fails to provide any specific and legitimate reasons, supported by substantial evidence in the record, for his conclusion that Dr. Woodward's opinion is contrary to the objective evidence. (AR 31).

Finally, Dr. Woodward's opinion is consistent with the treatment notes and clinical tests that he performed. "A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citation omitted). Here, the ALJ did not assess Plaintiff's credibility. (See generally AR 28-31). While noting that Plaintiff does not have a prescription for the cane she presented with at the hearing (AR 29) and observing an apparent inconsistency between Plaintiff's contention that she has significantly limited sitting and standing abilities and her treating physician's encouragement to exercise thirty minutes daily (AR 30), the ALJ did not make an explicit credibility finding. Even assuming, however, that the ALJ properly rejected Plaintiff's credibility, the record does not establish that Dr. Woodward based his opinion largely on Plaintiff's self-reports rather than the doctor's own clinical observations. See Ryan, 528 F.3d at 1199-200 (error where

ALJ asserted that examining physician relied "too heavily on [claimant's] 'subjective complaints' " but there was nothing in record to suggest that physician relied more heavily on claimant's complaints than the doctor's clinical observations); Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005) ("[T]here is no inconsistency between Webb's complaints and his doctors' diagnoses sufficient to doom his claim as groundless . . . . Webb's clinical records did not merely record the complaints he made to his physicians, nor did his physicians dismiss Webb's complaints as altogether unfounded. To the contrary, the doctors' reports and test results usually corresponded with the afflictions Webb perceived . . . ."). Contrary to Dr. Brovender's conclusion, Plaintiff's examinations were not "essentially normal." Dr. Woodward's clinical findings included moderate tenderness at L3-5, with pain radiating to Plaintiff's thighs, reduced grip strength, and a positive Phalen's Test.[1] (AR 599). Other clinical findings included L3-S1 pain and tenderness, decreased range of motion in the lumbar spine, and muscle spasms at L1-5 bilaterally. (AR 447-49). Dr. Woodward's clinical diagnoses included lumbar spine sprain, low back pain, and lumbar sciatica. (AR 445-49).

**2. Dr. Reece**

On October 17, 2014, Tyron C. Reece, M.D., Plaintiff's general practice physician, completed a Physical RFC Questionnaire. (AR

---

[1] "Phalen's maneuver is a diagnostic test for carpal tunnel syndrome." https://en.wikipedia.org/wiki/Phalen_maneuver (last visited Mar. 1, 2018).

590-93). He opined that Plaintiff's mid to lower back pain with deep throbbing sensations would cause constant inference with the attention and concentration necessary to sustain simple, repetitive work tasks. (AR 590-91). Because of Plaintiff's constant pain and difficulty with positioning, she is incapable of even low stress work. (AR 591). Plaintiff cannot sit for more than ten minutes or stand for more than five minutes without needing to change positions. (AR 591-92). During an eight-hour workday, Plaintiff can sit, stand or walk for less than two hours. (AR 592). She is incapable of lifting any weight and should never twist, stoop/bend, crouch, or climb. (AR 592). Plaintiff also has mild limitations in doing repetitive reaching, handling or fingering. (AR 592). Dr. Reece opined that due to her impairments, Plaintiff would likely miss more than four days of work per month. (AR 593). On December 29, 2014, Dr. Reece submitted a narrative disability evaluation. (AR 604-11). He opined that Plaintiff's impairments preclude her from any lifting, bending, stretching, pulling, squatting, stooping, climbing, or sitting or standing for more than ten minutes at any one time. (AR 611). The ALJ rejected Dr. Reece's opinions for the same reasons that he rejected Dr. Woodward's opinion. (AR 30-31).

The ALJ's analysis is contrary to law and not supported by substantial evidence. First, to the extent that the ALJ relied on the opinion of the nonexamining ME by itself to reject Dr. Reece's opinions, the ALJ erred. Lester, 81 F.3d at 831. Second, the ALJ's vague and cursory explanations for rejecting Dr. Reece's opinions are insufficient to meet the "specific, legitimate

reasons" standard. Embrey, 849 F.2d at 421-22; see Orn, 495 F.3d at 632.

Finally, Dr. Reece's opinions are consistent with the treatment notes and clinical tests that he performed. Even assuming, that the ALJ properly rejected Plaintiff's credibility, the record does not establish that Dr. Reece based his opinions largely on Plaintiff's self-reports rather than the doctor's own clinical observations. Dr. Reece's examinations were not "essentially normal." Instead, his clinical findings included paraspinal hypertonicity, with decreased range of motion, and an MRI "positive for L4-L5 disc." (AR 590, 607-08). He also observed poor exercise (cardiovascular) tolerance; persistent, nonproductive cough; indigestion, occasional vomiting, and upper abdominal pain; and chronic back and left shoulder pain, with very limited range of motion. (AR 606, 673-94). Based on his clinical observations, Dr. Reece found that Plaintiff's pain "has been [due to] the lack of blood perfusion to the paraspinal muscle masses and more recently the compromise of the nerve roots passing through the neuroforamen." (AR 610). Dr. Reece's clinical diagnoses included chronic cervical-lumbar myofascial syndrome with tension cephalgia, lumbar herniated disc L4-5, neuroforaminal stenosis, radiculopathy left lower extremities, and left shoulder arthropathy with left hand neuropathy. (AR 608; see also id. 673-94).

### 3. Dr. Jordan-Manzano

On March 15, 2015, Carlos Jordan-Manzano, M.D., completed a Mental RFC Questionnaire. (AR 667-71). He diagnosed major depressive disorder, recurrent. (AR 667). Dr. Jordan-Manzano opined that Plaintiff's mental impairments would cause her to be off-task for up to twenty percent of the work day, would be absent five or more days per month due to her conditions, and would experience poor concentration and memory due to her conditions. (AR 670-71). The ALJ rejected Dr. Jordan-Manzano's opinion, finding no objective support for the mental limitations. (AR 31). The ALJ noted that Plaintiff neither testified to any mental limitations nor listed any mental symptoms in her disability report. (AR 31). The ALJ also found that Plaintiff's mental impairments "improved shortly after her [major depression] diagnosis with appropriate treatment." (AR 31). The ALJ concluded that Plaintiff "has no more than "mild", if any, limitations in . . . mental functioning." (AR 31).

The ALJ's analysis is not supported by substantial evidence. First, Dr. Jordan-Manzano's opinion is consistent with Dr. Reece's assessment. In August 2015, Dr. Reece diagnosed PTSD and major depressive disorder. (AR 673). Dr. Reece concluded that Plaintiff's "mental health issues are an intrical [sic] entity of the primary cause and effect for the permanent disability accompanying her long term lumbar disc and back conditions." (AR 673). Second, while Plaintiff did not testify to any mental limitations, both she and her sister asserted in their disability

15

reports that Plaintiff has anxiety attacks when she is around a lot of people. (AR 326, 342).

Further, Dr. Jordan-Manzano's opinion is consistent with the treatment notes and clinical tests that he performed. "[A]n ALJ may not pick and choose evidence unfavorable to the claimant while ignoring evidence favorable to the claimant." Cox v. Colvin, 639 F. App'x 476, 477 (9th Cir. 2016) (citing Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014)). Plaintiff was initially diagnosed with major depressive disorder in October 2013. (AR 455). Thereafter, while Plaintiff reported some improvements, she continued to report depression and anxiety symptoms, despite being compliant with her medications. See Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017) ("[Psychiatric] [d]iagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.") (citation omitted). In December 2013, Plaintiff reported depressed mood, with passive suicidal ideations, isolation, PTSD, anhedonia, lethargy, irritability, and chronic pain. (AR 462). In February 2014, Plaintiff reported insomnia, and exhibited suboptimal improvement of symptoms. (AR 460). In April 2014, she reported frequent episodes of depressed mood. (AR 459). While her symptoms were "improving" by May 2014, they were still suboptimal. (AR 457). In November 2014, Plaintiff reported continuing symptoms of depression and isolation. (AR 654). In December 2014, Plaintiff presented in a sad mood, complaining of

social isolation and lack of motivation. (AR 652). In March 2015, Plaintiff presented in sad mood, spoke in a low tone, and complained of social isolation. (AR 648). By April 2015, Plaintiff reported sadness, isolation, insomnia, anorexia, and heart palpitations, despite being compliant with her medications. (AR 646). She presented in a low mood and sad affect. (AR 646). In May 2015, Plaintiff reported anxiety, depression, insomnia, and anorexia. (AR 644). In June 2015, Plaintiff continued to experience depressive and anxiety symptoms, despite being compliant with her medications. (AR 641). In July 2015, Plaintiff presented with frustrated mood and sad affect. (AR 639). She reported depressive and anxiety symptoms. (AR 639).

**4. Summary**

In sum, the ALJ did not provide specific and legitimate reasons for rejecting the opinions of Drs. Woodward, Reece, and Jordan-Manzano. On remand, the ALJ shall reevaluate the weight to be afforded these opinions, including the evidence submitted to the Appeals Council. If the ALJ finds appropriate reasons for not giving the opinions controlling weight, the ALJ may not reject the opinions without providing specific and legitimate reasons supported by substantial evidence in the record.[2]

---

[2] Plaintiff also argues that the ALJ erred in determining her RFC. (Dkt. No. 22 at 26-29). However, it is unnecessary to reach Plaintiff's arguments on this ground, as the matter is remanded for the alternative reasons discussed at length in this Order.

17

## VI.

## CONCLUSION

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: March 5, 2018

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**